IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| SILLIERINE BENNETT, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 13 C 8341 |
| | ) | |
| COMMUNITY AND ECONOMIC DEVELOPMENT ASSOCIATION OF COOK COUNTY, INC., | ) ) ) | Judge Joan H. Lefkow |
| | ) | |
| Defendant. | ) | |

## **OPINION AND ORDER**

Plaintiff Sillierine Bennett filed suit against her former employer, Community and Economic Development Association of Cook County, Inc. ("CEDA"), alleging age discrimination in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq.* (Count I), and retaliatory discharge under Illinois common law. (Count II). CEDA has moved to dismiss Count II and the first paragraph of Bennett's complaint under Federal Rule of Civil Procedure 12(b)(6). For the following reasons, CEDA's motion is granted.[1]

---

[1] The court has jurisdiction under 29 U.S.C. § 626(c)(1) and 28 U.S.C. § 1367. Venue is proper pursuant to 28 U.S.C. § 1391(b). Bennett originally filed this suit in Illinois state court and CEDA removed to this court. (Dkt. 1.) To the extent that Bennett argues the court does not have jurisdiction over her claims, she is incorrect. The court has original jurisdiction over her ADEA claim and supplemental jurisdiction over her state law claim. *See, e.g., Yassan* v. *J.P. Morgan Chase & Co.*, 708 F.3d 963, 968 (7th Cir. 2013) ("Here, there is no question that the federal district court had original jurisdiction over Yassan's case: 28 U.S.C. § 1331 supplied subject matter jurisdiction over Yassan's ADEA claim, while 28 U.S.C. § 1367(a) supplied jurisdiction over his fraud and wrongful termination claims.").

# BACKGROUND[2]

Bennett, born on February 9, 1950, is a former employee of CEDA, a private, not-for-profit corporation. (Dkt. 10-2 ("Compl.") ¶ 11.) She worked in multiple positions at CEDA from 1971 until 1983 and, in January 1989, CEDA rehired her as a housing coordinator at its Ford Heights facility. (*Id.* ¶¶ 6-7.) In addition to working at CEDA, Bennett served as the mayor of Ford Heights, Illinois, for several years during the 1990s and 2000s and ran for mayor again in 2009. (*Id*. ¶¶ 9-10.) In April 2009, CEDA directed Bennett to take a two-week unpaid leave of absence because she was working on her campaign. (*Id*. ¶ 13.) During and after her 2009 campaign, Bennett began to receive poor performance reviews. These actions were intended to retaliate for her political activity. (*Id*. ¶¶ 13-14.)

On January 3, 2011, CEDA eliminated Bennett's position but allowed her to apply for other open positions for which she was qualified. (*Id.* ¶ 15.) Shortly thereafter, Bennett applied for the position of central intake specialist. (*Id.* ¶¶ 16-18.) Although Bennett had previously held a similar position with CEDA, she did not receive the job. (*Id.* ¶¶ 17, 20.) Instead, CEDA hired an individual under the age of forty. (*Id*.) Bennett asserts that she was fired and not rehired because of her age and her previous political activity.

Bennett filed a charge with the State of Illinois Department of Human Rights and was issued a right-to-sue letter on August 28, 2012. (*Id*. ¶ 4.) She timely filed a *pro se* civil action against CEDA in the Circuit Court of Cook County, Illinois. (*Id*. ¶ 5.) Bennett later retained an attorney who filed an amended complaint on her behalf. (Dkt. 17 ¶ 9.) CEDA removed Bennett's action from Illinois state court to this court and moved to dismiss Count II and the first paragraph of the amended complaint. (Dkt. 10.)

---

[2] The facts in the background section are taken from Bennett's amended complaint and exhibits attached thereto and the court draws all reasonable inferences in her favor. *See Virnich* v. *Vorwald,* 664 F.3d 206, 212 (7th Cir. 2011).

**LEGAL STANDARD**

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) challenges a complaint for failure to state a claim upon which relief may be granted. Fed. R. Civ. P. 12(b)(6). In ruling on a Rule 12(b)(6) motion, the court accepts as true all well-pleaded facts in the plaintiff's complaint and draws all reasonable inferences from those facts in the plaintiff's favor. *Dixon* v. *Page,* 291 F.3d 485, 486 (7th Cir. 2002). To survive a Rule 12(b)(6) motion, the complaint must not only provide the defendant with fair notice of a claim's basis but must also establish that the requested relief is plausible on its face. *See Ashcroft* v. *Iqbal,* 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009); *Bell Atl.* v. *Twombly,* 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). The allegations in the complaint must be "enough to raise a right of relief above the speculative level." *Twombly,* 550 U.S. at 555. At the same time, the plaintiff need not plead legal theories. *Hatmaker* v. *Mem'l Med. Ctr.,* 619 F.3d 741, 743 (7th Cir. 2010). Rather, it is the facts that count.

**ANALYSIS**

**I.    Count II – Retaliation**

CEDA has moved to dismiss Count II of Bennett's complaint on two bases. First, it argues that Bennett cannot claim retaliation under Illinois law for any adverse employment events other than termination. Second, it argues that Bennett's claim of termination in retaliation for her political activities should be dismissed as a matter of law because it did violate any clear public policy, as is required to maintain a retaliatory discharge claim under Illinois law.

**A.    Employment Actions Other Than Termination**

In addition to terminating her employment for her political participation, Bennett alleges that CEDA retaliated against her by downgrading her performance evaluations, ordering her to

take a two-week unpaid leave of absence, and failing to rehire her for the open position for which she applied. These are not cognizable claims under Illinois law, as the Illinois Supreme Court has repeatedly voiced its reluctance to expand the retaliatory discharge tort beyond situations of actual discharge. *See Metzger* v. *DaRosa*, 805 N.E.2d 1165, 1173, 209 Ill. 2d 30, 282 Ill. Dec. 148 (2004) ("[T]his court has consistently sought to restrict the common law tort of retaliatory discharge" and has "*never* recognized a common law tort for any injury short of actual discharge.") (emphasis in original) (citations omitted); *Zimmerman* v. *Buchheit of Sparta, Inc.*, 645 N.E.2d 877, 882, 164 Ill. 2d 29, 206 Ill. Dec. 625 (1994) (refusing to expand tort of retaliatory discharge "to circumstances in which an employee suffers a loss of employment status or income or both, but is not terminated from her employment altogether"); *see also Bush* v. *Commonwealth Edison Co.*, 778 F. Supp. 1436, 1447-48 (N.D. Ill. 1991) ("Illinois courts have not recognized a common law or statutory cause of action for retaliatory demotion or failure to promote.") (citations omitted), *aff'd* 992 F.2d 928 (7th Cir. 1993). Bennett thus cannot maintain her common law retaliation claim for any employment action other than her discharge.[3]

## B. Retaliatory Discharge

"To state a valid retaliatory discharge cause of action, an employee must allege that (1) the employer discharged the employee, (2) in retaliation for the employee's activities, and (3) that the discharge violates a clear mandate of public policy." *Turner* v. *Mem'l Med. Ctr.*, 911 N.E.2d 369, 374, 233 Ill. 2d 494, 331 Ill. Dec. 548 (2009) (citing *Fellhauer* v. *City of Geneva*,

---

[3] Bennett frames this count entirely as a state law retaliatory discharge claim. She does not invoke the First Amendment to the United States Constitution or allege that her First Amendment rights were violated when she was discharged for her political activities. Nor would this claim succeed, as "[t]he First Amendment retaliation concept applies only to public employment, since private employers are not subject to the amendment." *Yatvin* v. *Madison Metro. Sch. Dist.*, 840 F.2d 412, 420 (7th Cir. 1988). Although Bennett notes in her complaint that CEDA "receives taxpayer provided government funding," she also states that it is "a private not-for-profit corporation." (Compl. ¶ 11.)

4

568 N.E.2d 870, 875, 142 Ill. 2d 495, 154 Ill. Dec. 649 (1991); *Barr* v. *Kelso-Burnett Co.*, 478 N.E.2d 1354, 1358, 106 Ill. 2d 520, 88 Ill. Dec. 628 (1985); *Palmateer* v. *Int'l Harvester Co.*, 421 N.E.2d 876, 878-89, 85 Ill. 2d 124, 52 Ill. Dec. 13 (1981)). Illinois courts have not articulated a precise definition of the term "public policy." *See Palmateer*, 421 N.E.2d at 878. Instead, "it can be said that public policy concerns what is right and just and what affects the citizens of the State collectively" and comes from the constitution, statutes, and judicial decisions. *Id.* A public policy matter "must strike at the heart of a citizen's social rights, duties, and responsibilities before the tort will be allowed." *Id.* at 878-89. Where there is no clearly mandated public policy, employers retain the right to fire workers at will, and a "broad, general statement of policy is inadequate to justify finding an exception to the general rule of at-will employment." *Turner*, 911 N.E. 2d at 375 (citations omitted).

"[T]he tort [of retaliatory discharge] has been narrowly construed in Illinois to include only discharges in retaliation for certain activities, such as reporting an employer's criminal violations . . ., or violations of health and safety standards." *Darchak* v. *City of Chicago Bd. of Educ.*, 580 F.3d 622, 628-29 (7th Cir. 2009) (citations omitted). For example, courts in Illinois have found that public policy may prohibit terminating an employee for reporting workplace safety concerns, *see Ziccarelli* v. *Phillips*, No. 12 C 9602, 2013 WL 5387864, at *6 (N.D. Ill. Sept. 25, 2013), violations of criminal law, *see Foley* v. *Cas Partners, LLC*, No. 09 C 6786, 2010 WL 960342, at *3 (N.D. Ill. Mar. 15, 2010), and for refusing to commit perjury, *see Blount* v. *Stroud*, 904 N.E.2d 1, 9-11, 232 Ill. 2d 302, 328 Ill. Dec. 239 (2009). But these situations are the "limited and narrow" exceptions to the general rule favoring employment at will. *Turner*, 911 N.E.2d at 374 (citations omitted). "Personal and individual grievances" cannot form the basis of an action for retaliatory discharge. *Zicarelli*, 2013 WL 5387864, at *5.

While Bennett's complaint adequately alleges that CEDA discharged her in retaliation for her political activities, CEDA argues that she has neither identified any clear mandate of public policy in her complaint nor adequately pleaded that her discharge violated any such policy. Facing similar facts, a court in this district dismissed a retaliatory discharge claim brought by a plaintiff allegedly fired for his political activity. *See Dandino* v. *Tieri*, 878 F. Supp. 129, 133-34 (N.D. Ill. 1994) ("It is up to the legislature and the courts of Illinois to expand the tort of retaliatory discharge to cover political patronage cases, not a federal district court sitting in diversity."). Bennett fails to point to any contrary case law. Instead she attempts to imply an Illinois public policy against retaliation for political activity from a single provision of Illinois election code requiring employers to give employees two hours to vote, *see* 10 Ill. Comp. Stat. 5/17-15, and "scholarly research." Neither is persuasive. First, the Illinois election code does not protect the rights of employees to run for political office while employed, and Bennett does not allege that CEDA interfered with her right to vote. "The fact that a constitutional or statutory provision is cited in the complaint . . . does not give rise to a retaliatory-discharge cause of action." *Barr*, 478 N.E. 2d at 1357. As for Bennett's second argument, the Illinois Supreme Court has instructed that public policy "is to be found in the State's constitution and statutes and, when they are silent, in its judicial decisions"—not academic works.[4] *Palmateer*, 421 N.E.2d at 878. And, as noted, generalized assertions that public policies exist are insufficient to support a claim for retaliatory discharge. *See Turner*, 911 N.E.2d at 375. Her claim for retaliatory discharge fails.

---

[4] Bennett cites to material from a workshop titled "Political Participation, Civic Democracy, and Public Policy: Assessing Citizen Participation and Public Policy" but provides no link between the workshop and Illinois public policy. Indeed, an Internet search reveals that the workshop took place at Hebrew University in Jerusalem and neither of the two Americans presenting at this particular workshop was from Illinois. *See* http://gradcon.huji.ac.il/2013/Program.pdf (last visited July 23, 2014).

## II. Paragraph One - Assorted Constitutional Claims

CEDA has also moved to dismiss the first paragraph of Bennett's complaint. Paragraph one states that Bennett brings her claims pursuant to the Fourteenth Amendment, Title VII, and various civil rights statutes, including 42 U.S.C §§ 1983, 1985, 1988, and 2000, in addition to the ADEA. In Bennett's response brief, however, she "acknowledges said paragraph's overbreadth[,]" and admits that she "only seek[s] relief for age discrimination." (Dkt. 17 ¶ 18.) Thus, CEDA's motion to dismiss paragraph one except for the reference to the ADEA is granted.[5]

## CONCLUSION AND ORDER

CEDA's partial motion to dismiss Count II and paragraph one of Bennett's complaint is granted with prejudice. The parties shall report on August 21, 2014 at 11:00 a.m. for a scheduling conference.

Dated: July 31, 2014

U.S. District Judge Joan H. Lefkow

---

[5] Bennett, at the end of her response brief, seeks to amend this paragraph. (*See* dkt. 17 at 5.) She does not state how she would amend it other than agreeing that its allegations are overbroad. Plaintiff may, if she wishes, file an amended complaint modifying the opening paragraph and eliminating her retaliatory discharge claim. A responsive pleading will not be necessary.